UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDI A. SHERER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 3:16-cv-05466 RAJ JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: June 2, 2017

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. 17, 18, 19).

After considering and reviewing the record, the Court concludes the ALJ committed harmful legal error when she failed to credit fully the medical opinions of three examining doctors regarding plaintiff's workplace limitations. The ALJ improperly

substituted her own opinions for that of three mental health professionals whose opinions were supported by significant objective evidence, including findings from mental status examinations, review of medical records, clinical interviews, and personal observations. Those opinions were also consistent with plaintiff's reports of minimal daily activities. Additionally, the ALJ erred when she assigned minimal weight to a pertinent medical opinion without first fully developing the record and considering all pages of the examining doctor's medical evaluation and report.

Therefore, this matter should be reversed and remanded for further administrative proceedings consistent with the Report and Recommendation.

## BACKGROUND

Plaintiff, BRANDI A. SHERER, was born in 1990 and was 19 years old on the alleged date of disability onset of January 9, 2009. *See* AR. 513-14, 515-24. Plaintiff left high school in the 10th grade and has not obtained a GED. AR. 248. Plaintiff has some work experience in fast food restaurants and some janitorial experience. AR. 249-55. Plaintiff left her last job following an accident when the job got too physical for her. AR. 255.

According to the ALJ, plaintiff has at least the severe impairments of "right hip posterior labral tear; lumbar mild facet osteoarthropathy; irritable bowel syndrome; migraines; major depressive disorder; anxiety disorder; and borderline personality traits 20 CFR 404.1520(c) and 416.920(c))." AR. 170.

At the time of the hearing, plaintiff was living with her mother. AR. 211.

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 286-88, 331-33. Plaintiff's first hearing resulted in a decision that she was not disabled and following a remand from the Appeals Council (*see* AR. 379-401, 402-406), plaintiff's second requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on February 24, 2014. *See* AR. 195-239. On July 18, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act *See* AR. 164-94.

On April 6, 2016, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR. 1-7. *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2016. *See* Dkt. 3. Defendant filed the sealed administrative record regarding this matter ("AR.") on November 1, 2016. *See* Dkt. 10.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated plaintiff's testimony; (3) Whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC") and erred by basing her step five finding on her erroneous

RFC assessment; and (4) Whether this Court should exercise its discretion and award benefits. *See* Dkt. 17, p. 2.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether the ALJ properly evaluated the medical evidence.**

Plaintiff contends that the ALJ erred when evaluating the opinions of plaintiff's examining psychological doctors and in developing the record with regard to plaintiff's examining physical doctor. *See* Dkt. 17, pp.3-6. Defendant contends that the ALJ appropriately failed to credit fully the opinions of Drs. Irwin, Wingate, and Bowes because the ALJ found that their opinions were inconsistent with the record as a whole, that their opinions were inconsistent with plaintiff's activities of daily living, and that their opinions were largely based on the plaintiff's self-reports. *See* Dkt. 18, pp.14-20. Additionally, while defendant concedes that a page of evidence is missing from Dr. Heilbrunn's report, defendant also argues that the ALJ did not err in developing the record because the record was adequate to allow for a proper evaluation of the evidence. *Id.*

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

A. <u>Drs. Jennifer Irwin, M.D., Terilee Wingate, Ph.D, and Tasmyn Bowes, Psy.D.</u>

Dr. Irwin conducted a psychological assessment of plaintiff on July 25, 2011. AR. 717. Dr. Irwin diagnosed plaintiff with major depressive disorder, posttraumatic stress disorder, pain disorder, and borderline personality disorder. AR. 721. She further opined based on her observations and objective findings that plaintiff was markedly impaired in her abilities to maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from a psychiatric condition, and deal with the usual stress encountered in a workplace. AR. 722.

Drs. Wingate and Bowes also conducted psychological evaluations of plaintiff on July 3, 2013 and April 2, 2014, respectively. AR. 823, 867. Both doctors also diagnosed plaintiff with major depressive disorder and pain disorder. AR. 824, 869. Similarly to Dr. Irwin, Dr. Wingate also diagnosed plaintiff with borderline personality disorder. AR. 825. Both doctors based their opinions on their findings that plaintiff had marked cognitive

limitations in "complet[ing] a normal work day and work week without interruptions from psychologically based symptoms." AR. 825, 870. Drs. Wingate and Bowes further found that plaintiff had marked to severe limitations in "perform[ing] activities within a schedule, maintain[ing] regular attendance, and be[ing] punctual within customary tolerances, without special supervision." *Id*.

The ALJ cited three identical findings to support her decision to give only some weight to all three doctors' opinions. AR.184-86. First, the ALJ rejected Drs. Irwin, Wingate, and Bowes' opinions with a finding that their opinions were "grossly inconsistent with the overall medical evidence of record and her [mental] examination findings." AR. 184-85. Specifically, the ALJ found that plaintiff consistently performed well on her mental status examinations ("MSEs"), which demonstrated "a much higher level of mental functioning than [plaintiff] claims." AR. 186, *see also* AR. 184-85. However, the ALJ appears to be substituting her own opinion regarding plaintiff's performance on the MSEs for that of the three mental health professionals who conducted the MSEs and rendered their opinions accordingly.

The MSE is generally conducted by medical professionals skilled and experienced in psychology and mental health. Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental

illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick v. Charter*, 157 F.3d715, 725 (9th Cir. 2005); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")

The ALJ's failure to credit fully Drs. Irwin, Wingate, and Bowes based on a finding that plaintiff's MSEs were inconsistent with the doctors' respective opinions fails to acknowledge the doctors' expertise in conducting, evaluating, and rending opinions based on MSE results. It also ignores the fact that MSE findings do not necessarily bear any relation to plaintiff's limitations in completing a normal workday or workweeks. For example, Drs. Irwin, Wingate, and Bowes all found while conducting MSEs that plaintiff demonstrates normal thought processes, content, orientation, memory, perception, fund of knowledge, and concentration. Nevertheless, they also found that plaintiff suffers from severe symptoms associated with major depressive disorder, chronic pain, and borderline personality disorder. AR. 721, 825, 869-70. Based on the totality of their examination results, all three doctors ultimately opined that despite her normal thought processes, plaintiff has marked limitations in completing a normal workday or workweek without interruption. AR. 722, 825, 870. Although plaintiff performed well on her MSEs, this is not necessarily inconsistent with a marked limitation in her ability to perform effectively

in a work setting. The ALJ's failure to credit fully these three opinions and, instead, substituting her own opinion in their place without further explanation is in error.

Second, the ALJ rejected Drs. Irwin, Wingate, and Bowes' opinions with a finding that their opinions were based on plaintiff's subjective complaints. AR. 184-86. However, the ALJ cited no evidence in support of this finding, and the Court concludes that it is not based on substantial evidence in the record as a whole.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, Drs. Irwin, Wingate, and Bowes' opinions are based more heavily on objective findings than on plaintiff's subjective complaints. For example, during Dr. Irwin's examination of plaintiff, she conducted a clinical interview, reviewed plaintiff's records, medical and psychiatric history, administered a MSE, and made diagnoses based on her observations and findings. AR. 717-722. Similarly, in the course of their evaluations with plaintiff, both Drs. Wingate and Bowes conducted clinical interviews with plaintiff, reviewed her medical records, conducted MSEs and made clinical findings

and diagnoses based on their observations. AR. 823-27, 867-72. The Court concludes that these objective tests, findings, and observations by Drs. Irwin, Wingate, and Bowes support their opinions.

Finally, the ALJ failed to credit fully the doctors' opinions based on a finding that their opinions were "not in line with [plaintiff]'s reported activities of daily living during the [MSE]." AR. 184-186. However, the record as a whole demonstrates that this finding is not supported by substantial evidence.

For example, plaintiff consistently reported to all three doctors that while she is able to complete some minimal physical activities such as cooking, cleaning, showering, and dressing "two times a week when she has to leave the house," she is unable to or has difficulty completing more strenuous activities such as shopping, mopping, vacuuming, and yard work. AR. 720, 824, 868. Plaintiff further reported that her pain makes it difficult for her care for herself (AR. 868), that she is unable to do much without first using a heating pad in the morning until her medications take effect (AR. 824), and that she requires assistance from family to complete tasks such as transportation and shopping (AR. 824, 868). These activities are consistent with the doctors' findings that plaintiff suffers from chronic pain and that her ability to maintain regular attendance in the workplace is markedly to severely impaired. AR. 720, 824, 868.

Additionally, plaintiff reported to Drs. Irwin, Wingate, and Bowes that while she enjoys reading, watching television and spending time on the computer, she does so only for short periods (45 minutes to 3 hour periods). *Id*. Plaintiff reports spending most of her time sleeping; which she does late into the day. *Id*. These reported activities appear to be

consistent with the doctors' findings that while plaintiff's intellectual functioning and concentration is intact, her physical pain and symptoms associated with major depressive disorder and personality disorder markedly interrupt a normal work day. AR. 720-22, 824-25, 869-70.

For the reasons stated above, the Court concludes that the ALJ did not provide specific and legitimate reasons based on substantial evidence in the record as a whole for the failure to credit fully the medical opinions of Ds. Irwin, Wingate and Bowes. The Court further concludes that the error is harmful.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

The ALJ found that plaintiff could perform competitive full-time work. AR. 173. In the ALJ's determination regarding plaintiff's residual functional capacity ("RFC"), the ALJ also found that plaintiff could stand and walk for two hours and sit for six hours in an eight-hour workday, occasionally climb ramps or stairs, and perform simple routine tasks. *Id*. In contrast, Drs. Irwin, Wingate and Bowes opined that plaintiff had marked limitations in her ability to complete a normal workday or workweek and has marked to severe limitations in her ability to maintain regular attendance in the workplace. *See* AR. 720, 824, 868. Their opinions were based on consistent findings that plaintiff suffers from severe symptoms associated with major depressive disorder, chronic pain, and borderline personality disorder which frequently prevent her from leaving the house, completing physical tasks, and maintaining an independent lifestyle. AR. 720-21, 824-25, 868-70.

The limitations identified by Drs. Irwin, Wingate and Bowes could lead to a finding of disability. Had the ALJ properly considered the doctors' opinions, she may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational expert, Marilyn Thomas. As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal.

However, outstanding issues exist that must be resolved before a determination of disability can be made. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). While Drs. Irwin, Wingate, and Bowes opine that plaintiff faces marked limitations in the workplace, the specific extent of these limitations is unclear. Additionally, as discussed at further length below, pertinent evidence appears to be missing from the record. *See* subsection B. Therefore, this matter is reversed and remanded for further administrative

proceedings consistent with this Report and Recommendation, as opposed to reversed with a direction to award benefits, as requested by plaintiff. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)(citations omitted)(remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).

### B. Dr. Mark Heilbrunn, M.D.

Dr. Heilbrunn conducted a physical evaluation of plaintiff on July 27, 2011. AR. 724-26. Based on his examination of plaintiff, Dr. Heilbrunn opined that plaintiff could perform consistently with light work activity, namely lifting/carrying capacity a maximum of 20 pounds occasionally and 10 pounds frequently, with either hand. AR. 727; *see also* 20 CFR 404.1567(b) and 416.967(b). The ALJ gave little weight to Dr. Heilbrunn's opinion finding that it was inconsistent with his physical examination findings. AR. 183. However, as plaintiff points out, and defendant concedes, the ALJ did not review page five of Dr. Heilbrunn's 6-page report. Dkt.17, p. 4; Dkt. 18, p. 14.

Without reviewing this missing page, the Court cannot conclude whether, as plaintiff contends, it contains pertinent information relative to her "sitting, standing, and walking limitations," or whether, as defendant contends, it does not contain credible information that would create ambiguity in the record. *See Id*. It is, however, clear that the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))). The ALJ's "duty

exists even when the claimant is represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (citing *Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930-34 (9th Cir. 2014) (an ALJ fails to fulfill the duty to develop the record by failing to acquire a complete set of IQ scores where IQ is relevant to step 3 and to reviewing doctors' opinions).

However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen, supra*, 80 F.3d at 1288 (other citation omitted)). Therefore, to the extent necessary for a proper evaluation of the record, the ALJ should fully develop the record including the fifth missing page of Dr. Heilbrunn's opinion, following remand of this matter.

For the reasons stated, the Court concludes the ALJ committed harmful error in evaluating the medical evidence and this matter should be reversed and remanded for further proceedings consistent with this opinion. The Court further notes that the record contains other important medical evidence which may impact the ALJ's findings. *See* Dkt. 17, pp.8-14. The Court instructs the ALJ to consider all pertinent medical evidence on remand.

**(2)   Whether the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding

limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

The Court also notes, however, that the ALJ erred when she failed to credit fully plaintiff's testimony based on her finding that it was inconsistent with plaintiff's treatment record. AR. 174. The ALJ dismissed plaintiff's statements regarding her limitations reasoning that her "claims of debilitated functioning are inconsistent with contemporaneous reports of actual functioning." *Id*. However, the ALJ did not offer specific, clear and convincing reasons in support of her finding, but rather a six-and-a-half page blanket recitation of plaintiff's medical records. *See* AR. 174-181; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). The ALJ's conclusory finding and vast information dump without further analysis, does not achieve the level of specificity that the law requires. *See Regennitter v. Comm'r of Soc. Sec. Admin,* 166 F.3d 1294, 1299 (9th Cir. 1999) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)("The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct.") Therefore, the Court directs the ALJ to provide further analysis with the appropriate level of specificity in support of her finding on remand.

> **(2) Whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC") and erred by basing her step five finding on her erroneous RFC assessment.**

The Court already has concluded that the ALJ erred when evaluating the medical evidence, and that this matter should be reversed and remanded for further administrative proceedings, *see supra*, section 1. As a necessity, the RFC must be reevaluated anew following remand of this matter.

**(4) Whether this Court should exercise its discretion and award benefits.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 2, 2017**, as noted in the caption.

Dated this 9th day of May, 2017.

J. Richard Creatura
United States Magistrate Judge